IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-3622 |
| | § | |
| 165 FIREARMS, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiff's Motion for Partial
Summary Judgment (Docket Entry No. 42)[1] filed by the United States
of America.  Claimants Robert Arwady and Arwady Hand Truck Sales,
Inc. ("Arwady Hand Truck") filed a brief in opposition,[2] the
United States replied,[3] and the claimants replied.[4]  For the reasons
stated below, the court will deny the United States' MSJ.

**I.   Factual and Procedural Background**

The United States seeks the forfeiture of 165 Firearms (the
defendants in rem) that were seized at Arwady's residence and at

---

[1]Plaintiff's   Motion   for   Partial   Summary   Judgment
("United States' MSJ"), Docket Entry No. 42.

[2]Joint Claimants Robert Arwady and Arwady Hand Truck Sales,
Inc.  Opposition  to  Plaintiff's  Motion  for  Summary  Judgment
("Claimants' Response"), Docket Entry No. 51.

[3]Plaintiff's Reply in Support of Motion for Partial Summary
Judgment ("United States' Reply"), Docket Entry No. 52.

[4]Joint Claimants Robert Arwady and Arwady Hand Truck Sales,
Inc. Response to Plaintiff's Reply ("Claimants' Reply"), Docket
Entry No. 54.

Ammo Dump, Inc.[5]  The United States alleges that Arwady is the president of Ammo Dump, Inc. and Arwady Hand Truck.[6]  The United States alleges that Ammo Dump, Inc. does not have a federal firearms license and that Arwady Hand Truck's federal firearms license was revoked in 2007.[7]  The United States alleges three bases for the forfeiture.  First, the United States alleges that claimants engaged in the business of dealing firearms but were not licensed firearms dealers, in violation of 18 U.S.C. § 922(a)(1)(A).[8]  Second, the United States alleges that Arwady was an unlawful user of a controlled substance and that he therefore violated 18 U.S.C. § 922(g)(3) by possessing firearms.[9]  Third, the United States alleges that claimants possessed unregistered firearms in violation of 26 U.S.C. § 5861(d).[10]  Attached to the Amended Complaint are two exhibits listing and describing the 165 Firearms.[11]

---

[5]Amended Verified Complaint for Forfeiture in Rem ("Amended Complaint"), Docket Entry No. 39, pp. 1-2.

[6]Id. at 5.

[7]Id. at 4-5.

[8]Id. at 2-3; id. at 4-6.

[9]Id. at 6-7.

[10]Id. at 3; id. at 6.

[11]Asset List for Personal Seizure Notice - CAFRA, Exhibit A to Amended Complaint, Docket Entry No. 39-1; Asset List for Personal Seizure Notice - NFA, Exhibit B to Amended Complaint, Docket Entry No. 39-2.

Arwady and Arwady Hand Truck filed a claim[12] and an answer seeking a take-nothing judgment and the return of the 165 Firearms.[13]

## II. **United States' MSJ and Claimants' Response**

The United States seeks summary judgment on the first ground of forfeiture alleged in the Amended Complaint (selling firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A)).[14]

The United States argues that

[a]fter Arwady Hand Truck Sales, Inc. lost its Federal firearms license, Arwady Hand Truck Sales, Inc. and Robert Arwady continued to sell firearms and maintain an inventory of firearms for sale.  This inventory was seized pursuant to a search warrant and this inventory should be forfeited as having been involved in the illegal dealing in firearms.[15]

The United States organizes its summary judgment evidence around four declarations.  The declarants incorporate many documents into their statements, and those documents are attached as exhibits.[16]

---

[12]Seized Asset Claim of Robert Arwady, Individually, and Arwady Hand Truck Sales, Inc., Docket Entry No. 8.

[13]Original Answer of Robert Arwady and Arwady Hand Truck Sales, Inc. and Request for Jury Trial, Docket Entry No. 13, p. 3.

[14]The United States abandoned its argument that Arwady Hand Truck lacked capacity to sue because it had forfeited its corporate status.  United States' MSJ, Docket Entry No. 42, p. 10 (asking the court to strike Arwady Hand Truck's claim); United States' Reply, Docket Entry No. 52, p. 1 (withdrawing this motion to strike).  The court therefore will not address this issue.

[15]United States' MSJ, Docket Entry No. 42, p. 10.

[16]The documents can be found in the record at Docket Entry Nos. 43-47.

The first declaration is by Area Supervisor William E. Frye, Jr. of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").[17]  Supervisor Frye states that in 2006 the "ATF denied Arwady Hand Truck Sales, Inc.'s renewal application for a Federal firearms license."[18]  Supervisor Frye states that he compared the list of firearms seized with the inventory records Arwady Hand Truck submitted when it stopped operating in 2007 and that he determined that 31 of the seized firearms matched entries in the 2007 records.[19]

The United States also relies on a declaration made by Paul Helinski, the owner of GunsAmerica.com.[20]  Helinski states that Arwady and Ammo Dump, Inc. advertised firearms on his website.[21]

Special Agent Tommy Ho of the ATF in his declaration describes his July 2009 investigation into illegal firearms dealing.[22] Special Agent Ho states that he found the label "©2007 AMMODUMP/ARWADY SALES, INC." on the homepage of www.ammodump.com and that on another page of the site the following appeared:

---

[17]Declaration of William E. Frye, Jr., attached to the United States' MSJ, Docket Entry No. 42-1.

[18]Id. at 2.

[19]Id. at 2-3.

[20]Declaration of Paul Helinski, attached to the United States' MSJ, Docket Entry No. 42-2.

[21]Id. at 1.

[22]Declaration of Special Agent Tommy Ho, attached to the United States' MSJ, Docket Entry No. 42-3, p. 2.

> We carry a full range of firearms, accessories and
> special order items. At this time, we currently offer
> such a large variety of inventory and selections change
> daily, that we are unable to list all we have to offer.[23]

Special Agent Ho also states that he searched the site "http://w.w.w.gunsamerica.com" and found "114 guns and related items [] listed for sale by 'Seller: Ammo Dump (FFL dealer).'"[24] Special Agent Ho states that he obtained and executed search warrants at Arwady's residence, the retail store of Ammo Dump, Inc., and the residence of Michael Paul Medrano.[25] Special Agent Ho states that 143 firearms were found at Ammo Dump, Inc.'s retail store and 19 firearms and "3 NFA devices" were found at Arwady's residence.[26] Finally, Special Agent Ho states that he examined business records taken from Ammo Dump, Inc. and identified "approximately 55 records relating to acquisition and sale of firearms by Ammo Dump, Inc. that were conducted after 2006."[27]

Special Agent Christopher L. Lewis of the ATF states that he visited www.ammodump.com in July of 2009 and found the pages reproduced in Exhibits 5 through 19.[28] Exhibits 5 through 19 appear

---

[23]Id.; see infra note 29.

[24]Id. at 3.

[25]Id. at 3-4.

[26]Id. at 4.

[27]Id.

[28]Declaration of Special Agent Christopher L. Lewis, attached to the United States' MSJ, Docket Entry No. 42-4, p. 2.

to show various sales pages, with pictures of firearms, each with an identification of the caliber, a "Product Description," and a "Price."[29]

The United States argues that the exhibits attached to its MSJ along with the declarations prove that Arwady and Arwady Hand Truck violated 18 U.S.C. § 921(a)(1)(A).  The United States argues that

> [t]he evidence has established that Arwady Hand Truck Sales, Inc. and Robert Arwady knew that Federal firearms license for Arwady Hand Truck Sales, Inc. had been revoked.  Despite this they continued to advertise firearms for sale on two different web sites, they continued to sell firearms and maintain an inventory of firearms for sale.  A comparison of the firearms in the inventory when the books were given to ATF after the revocation of the license and the seized firearms revealed [] only 31 matches of firearms.  They continued to acquire firearms for sale.  In the web advertisement they held themselves out as a "FFL."  They continued to possess a substantial quantity of firearms.[30]

The claimants argue in response that any firearms sold after October of 2007 were sold from Arwady's personal collection and

---

[29]See, e.g., Exhibit 9, attached to the United States' MSJ, Docket Entry No. 43-9 (picturing a "Steyr Aug," identified as having a caliber of 223, a price of "$4650.00," and the following product description: "New unfired preban steyr Aug.  16" barrel black stock.  comes with 2 42 rd mags.  Internet sales only."); see also, Exhibit 5, attached to United States' MSJ, Exhibit 43-5 (containing the following text: "We carry a full range of firearms, accessories and special order items.  At this time, we currently offer such a large variety of inventory and selections change daily, that we are unable to list all we have to offer.  Please contact us during business hours, Monday-Saturday, 10-6 PM central time about any inquiries.").

[30]United States' MSJ, Docket Entry No. 42, pp. 18-19 (internal citation omitted).

-6-

were sold by Arwady in his individual capacity.[31]  Claimants further argue that the only firearms sold on the Ammo Dump, Inc. website and the GunsAmerica.com website were firearms from Arwady's personal collection and that these firearms were sold "to dispose of his personal inventory/collection."[32]  Finally, claimants argue that "[t]here is no allegation that Arwady Hand Truck Sales, Inc. was in the business of selling firearms" and that all firearms in the possession of Arwady Hand Truck "were transferred . . . with [the] approval of ATF prior to the October 2007 date."[33]

Attached to Claimants' Response is an affidavit signed by Arwady.[34]  Arwady states that he did not buy any firearms after 2007, that the firearms in Exhibit A to the Amended Complaint are in his "own personal collection," and that "[a]ny firearm sold by me after October 2007 was from my own personal collection."[35]  In addition, Arwady states that "[t]he firearms in government's Exhibit B are title III firearms that were pre-approved transfers by the ATF from Arwady Sales to Arwady Hand Truck Sales, Inc."[36]

---

[31]Claimants' Response, Docket Entry No. 51, p. 5.

[32]Id.

[33]Id. at 6.

[34]Affidavit of Robert Arwady, attached to Claimants' Response, Docket Entry No. 51-2.

[35]Id. at 1.

[36]Id.

### III.  <u>Applicable Law</u>

A.    **Summary Judgment Standard**

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case."  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (quoting <u>Celotex</u>, 106 S. Ct. at 2553).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to show that specific facts exist over which there is a genuine issue for trial.  <u>Id.</u> (citing <u>Celotex</u>, 106 S. Ct. at 2553-54).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the

-8-

evidence."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2110 (2000).

## B.  Forfeiture Under 18 U.S.C. § 924(d) and 18 U.S.C. § 922(a)(1)(A)

Section 924 of Title 18 sets out the penalties attaching to violations of Chapter 44, which govern firearms.  Section 924(d)(1) provides that "any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure and forfeiture."  Paragraph (3)(C) of § 924(d) includes among the offenses triggering forfeiture a violation of 18 U.S.C. § 922(a)(1).  Section 922(a)(1)(A) makes it unlawful for any person

> except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

The United States includes a violation of § 922(a)(1)(A) in the bases it alleges for forfeiture.[37]  The United States moves for summary judgment on the alleged § 922(a)(1)(A) violation, predicated on the allegation that claimants "continued to advertise firearms for sale on two different websites . . . [and] continued to sell firearms and maintain an inventory of firearms for sale."[38]

---

[37]Amended Complaint, Docket Entry No. 39, pp. 2-6.

[38]United States' MSJ, Docket Entry No. 42, pp. 18-19.

-9-

**C.   "Engaged in the Business" Under 18 U.S.C. § 921(a)(21)**

Claimants argue that Arwady was not "engaged in the business" of firearms dealing when he sold firearms after 2007, as § 922(a)(1)(A) requires, but was instead managing his personal collection.  The definition of the term "engaged in the business"

> as applied to a dealer in firearms, as defined in section 921(a)(11)(A), [is] a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but <u>such term shall not include a person</u> who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or <u>who sells all or part of his personal collection of firearms</u>.

18 U.S.C. § 921(a)(21)(C) (emphasis added).

The Fifth Circuit recently examined § 921(a)(21) and set out the following analytical framework for determining when a series of transactions qualifies as "engaging in the business" of firearms dealing:

> Since the enactment in 1986 of 18 U.S.C. § 921(a)(21), our court has not addressed what constitutes being "engaged in the business" of dealing in firearms.  The above-cited Third Circuit opinion in [*United States v. Tyson*, 653 F.3d 192 (3d Cir. 2011)] states that defendant engages in the business of dealing in firearms when his "principal motivation is economic" and he "pursues this objective through the repetitive purchase and resale of firearms."  653 F.3d at 200-01.  Needless to say, in determining the character and intent of firearms transactions, the jury must examine all circumstances surrounding the transaction, without the aid of a "bright-line rule."  *United States v. Palmieri*, 21 F.3d 1265, 1269 (3d Cir.), *vacated on other grounds*, 513 U.S. 957 (1994).  Relevant circumstances include: "the quantity and frequency of sales"; the "location of the sales"; "conditions under which the sales occurred"; "defendant's behavior before, during, and after the

-10-

sales"; "the price charged"; "the characteristics of the firearms sold"; and, "the intent of the seller at the time of the sales". *Tyson*, 653 F.3d at 201.

United States v. Brenner, 2012 WL 1499753, at *3 (5th Cir. April 30, 2012) (unpublished).

## IV.  **Application**

The United States has failed to make the showing outlined by the Fifth Circuit in Brenner.  The United States has produced substantial summary judgment evidence regarding some of the relevant factors — the quantity, frequency, and location of the sales, in addition to the characteristics and prices of the firearms.  But the United States has not adequately established the "conditions under which the sales occurred," the "defendant's behavior before, during, and after the sales," and "the intent of the seller at the time of the sales."  See Brenner, 2012 WL 1499753, at *3.  Moreover, Arwady's affidavit further puts into question at least two of these factors.  Arwady's statement that "[a]ny firearm sold after October 2007 was sold by me as an individual from my personal collection"[39] is relevant to the conditions under which the sales occurred and Arwady's intent in making the sales.  The court concludes that there is a fact question regarding whether the firearms sold by Arwady were sold from a personal collection.

_____

[39]Affidavit of Robert Arwady, attached to Claimants' Response, Docket Entry No. 51-2, p. 1.

To the extent the United States alleges that firearms were sold from Hand Truck Sales' inventory (and are therefore not susceptible to the personal collection argument), the United States has not sufficiently briefed or supported the issue for the court to grant summary judgment.  The court concludes that there is a fact issue as to whether the firearms sold were from Arwady's personal collection, if such existed, or from Hand Truck Sales' inventory.  Because these are questions for trial, the court will deny summary judgment.

### V. <u>Conclusion and Order</u>

For the reasons explained above, Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 42) is **DENIED.**

**SIGNED** at Houston, Texas, on this the 6th day of July, 2012.

SIM LAKE
UNITED STATES DISTRICT JUDGE